IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AISHIA HOWARD, Plaintiff, v. PHILADELPHIA HOUSING AUTHORITY, Defendant. | : | CIVIL ACTION No. 15-4462 |

M E M O R A N D U M

EDUARDO C. ROBRENO, J. July 18, 2016

Plaintiff Aishia Howard ("Plaintiff") brought this action against her former employer, Philadelphia Housing Authority ("Defendant"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. In her Complaint, Plaintiff alleged that Defendant took retaliatory action to terminate her employment after she complained about wage and overtime violations that she was experiencing.

After a conference with Magistrate Judge Thomas J. Rueter, the parties reached a settlement agreement for which Plaintiff now seeks this Court's approval. For the reasons that follow, the Court will grant in part and deny in part Plaintiff's uncontested motion for judicial approval of the settlement agreement.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

From February to June 2015, Defendant employed Plaintiff as a "Certified Property Specialist" for its residential housing facility operations in Philadelphia, Pennsylvania. Compl. ¶¶ 6-7. Defendant classified Plaintiff as non-exempt from the FLSA's overtime pay requirements. Id. at ¶ 8.

On May 4, 2015, Plaintiff emailed Defendant's human resources ("HR") department to express concerns that Defendant was not properly compensating her for work in excess of 40 hours per week. Id. at ¶ 10. Plaintiff alleges that she continued to send follow-up emails to an HR representative and speak with supervisors about her concerns through May 2015. Id. at ¶ 11.

On June 15, 2015, Plaintiff emailed Defendant's HR department to check the status of her complaints. Id. at ¶ 12. Later that afternoon, Defendant terminated Plaintiff's employment. Id. at ¶ 13.

Plaintiff filed suit against Defendant in this Court on August 10, 2015. ECF No. 1. On November 30, 2015, Defendant filed an answer, generally denying most of Plaintiff's allegations and asserting several affirmative defenses. ECF No. 8. The parties thereafter served and responded to interrogatories and document requests. Pl.'s Mem. 3, ECF No. 16-1.

On February 26, 2016, the parties participated in a settlement conference with Magistrate Judge Thomas J. Rueter, during which the parties agreed to settle the matter for a total of $10,000.00. ECF No. 14; Pl.'s Mem. 3. Then, on March 31, 2016, Plaintiff filed her Motion for Approval of the FLSA Settlement, attaching a copy of the Settlement Agreement and Release of Claims ("Settlement" or "Settlement Agreement"), a memorandum of law in support of the motion, and a declaration of attorneys' fees and costs. ECF No. 16.

## II. TERMS OF THE SETTLEMENT

The parties' proposed Settlement Agreement provides that Defendant will pay a total of $10,000.00 to Plaintiff. Settlement ¶¶ 3-4. After applicable tax withholdings and deductions, Plaintiff will receive $6,250.00. Id. at ¶ 3. Under the Settlement Agreement, Plaintiff's counsel will receive $3,750.00 in attorneys' fees and expenses. Id. at ¶ 4.

In exchange, Plaintiff has agreed to release any and all of the following:

> actions, causes of action, claims, suits, complaints, demands, rights, damages, losses, accounts, judgments, wages, commissions, severance, executions, debts, obligations, rights of contribution and indemnification, attorneys' fees, costs and all other liabilities of any kind or description whatsoever, either in law or equity, whether known or unknown, suspected or unsuspected, concerning the termination

> of Plaintiff's employment with Defendant, including, but not limited to, claims arising under the Fair Labor Standards Act and Pennsylvania wage and hour laws.

Id. at ¶ 5(a). The Settlement Agreement requires Plaintiff to waive any such claims arising from "the beginning of time up to and including the date this Agreement is executed." Id. at ¶ 5(b).

## III. MOTION TO APPROVE THE SETTLEMENT AGREEMENT

### A. Legal Standard

FLSA claims may be compromised or settled in two ways: (1) supervision by the Department of Labor, pursuant to 29 U.S.C. § 216(c), or (2) approval by the district court, pursuant to 29 U.S.C. § 216(b). Adams v. Bayview Asset Mgmt., LLC, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014).

The parties proceed under the second avenue--approval by the district court. Without guidance from the Third Circuit, district courts within this Circuit have looked to the standard set forth by Eleventh Circuit in Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982), when a party seeks judicial approval of an FLSA settlement agreement pursuant to 29 U.S.C. § 216(b). See Mabry v. Hildebrandt, No. 14-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015) (collecting cases).

Under the Lynn's Food standard, "[w]hen parties present to the district court a proposed settlement, the district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" Cuttic v. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (quoting Lynn's Food, 679 F.2d at 1354); see also Lyons v. Gerhard's Inc., No. 14-06693, 2015 WL 4378514, at *3 (E.D. Pa. July 16, 2015) (applying the Lynn's Food standard).

If the Court determines that the settlement concerns a "bona fide dispute," it will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s),[1] and (2) the agreement furthers the FLSA's

[1] Courts in this Circuit routinely apply the nine-factor test from Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975), to assess whether a proposed FLSA collective or state law class action settlement agreement is fair and reasonable. See, e.g., Lyons, 2015 WL 4378514, at *4; Brumley v. Camin Cargo Control, Inc., Nos. 08-1798, 10-2461, 09-6128, 2012 WL 1019337, at *4-5 (D.N.J. Mar. 26, 2012). In the absence of guidance from the Third Circuit, district courts have also used the Girsh factors to assess whether a private FLSA settlement is fair and reasonable. See, e.g., Lyons, 2015 WL 4378514, at *3 n.1, 4; Bettger v. Crossmark, Inc., No. 13-2030, 2015 WL 279754, at *7 (M.D. Pa. Jan. 22, 2015). But at least some of the Girsh factors appear to be little help, if not irrelevant, in the single-plaintiff context. See Kraus v. PA Fit II, LLC, No. 15-4180, 2016 WL 125270, at *4 n.3 (E.D. Pa. Jan. 11, 2016). Thus, "[e]ven though Girsh may suggest the type of factors to be

implementation in the workplace. See Mabry, 2015 WL 5025810, at *3; McGee v. Ann's Choice, Inc., No. 12-2664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014). The Court uses this standard to assess the propriety of FLSA collective action settlements and private (i.e., single-plaintiff) FLSA settlements alike. Kraus v. PA Fit II, LLC, No. 15-4180, 2016 WL 125270, at *5 (E.D. Pa. Jan. 11, 2016) (explaining the rationale for applying the Lynn's Food standard to private FLSA settlements); see also Mabry, 2015 WL 5025810, at *1-2 (collecting cases in which the courts have applied the Lynn's Food standard to private FLSA settlement agreements); Bettger v. Crossmark, Inc., No. 13-2030, 2015 WL 279754, at *3-4 (M.D. Pa. Jan. 22, 2015) (same).

B. Analysis

With this framework in mind, the Court proceeds to analyze the propriety of the proposed private FLSA settlement agreement here.

1. Bona fide dispute

The Court must first address the threshold question of whether the proposed agreement resolves a bona fide dispute. A dispute is "bona fide" where it involves "'factual issues'

---

considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying Girsh simply because it is the court's duty to assess whether the proposed agreement is fair and reasonable." Id.

rather than 'legal issues such as the statute's coverage and applicability.'" Creed v. Benco Dental Supply Co., No. 12-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013) (quoting Lignore v. Hosp. of Univ. of Pa., No. 04-5735, 2007 WL 1300733, at *3 (E.D. Pa. May 1, 2007)). A proposed settlement resolves a bona fide dispute where the settlement's terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute" and are not a "mere waiver of statutory rights brought about by an employer's overreaching." Lynn's Food, 679 F.2d at 1355. "[T]o approve an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA." Id. at 1354. In other words, "for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." Kraus, 2016 WL 125270, at *10.

Here, in its Answer, Defendant generally denied Plaintiff's allegations of wrongdoing. ECF No. 8. Defendant also asserted several affirmative defenses, including failure to state a claim; absence of protected conduct; justified termination for "legitimate, non-discriminatory, and non-pretextual business reasons"; and failure to mitigate damages.

Id. 4-5. According to Plaintiff, during discovery, "Defendant continued to assert that Plaintiff's termination was not in response to her complaints about potential wage and overtime violations." Pl.'s Mem. 3. Plaintiff also states that "[d]uring the settlement conference, the parties continued to assert their respective positions." Id. Defendant's continued denial of liability evidences its rejection of Plaintiff's claim.

Moreover, the proposed Settlement Agreement itself states that "Defendant denies Plaintiff's allegations and denies any and all liability to Plaintiff." Settlement 1. Although "[t]he recital in the release of the existence of a 'bona fide dispute' is . . . merely the declaration of a legal conclusion," Stilwell v. Hertz Drivurself Stations, Inc., 174 F.2d 714, 717 (3d Cir. 1949), the Settlement Agreement's recital coupled with Defendant's continued denial of Plaintiff's allegations are sufficient evidence of a bona fide dispute to assure the Court that the proposed Settlement Agreement does not present a "mere waiver of statutory rights brought about by an employer's overreaching." Lynn's Food, 679 F.2d at 1355.

2. Furtherance of the FLSA's implementation and whether the proposed Settlement Agreement is fair and reasonable

The Court must next determine whether the Settlement is fair and reasonable. Mabry, 2015 WL 5025810, at *3. Here, the Court finds that the compensation terms are fair and reasonable

because the settlement amount is significant in light of Plaintiff's claim. The proposed Settlement Agreement provides that Defendant shall pay a total of $10,000.00 to Plaintiff. Settlement ¶¶ 3-4. According to Plaintiff, "[t]his payment represents slightly more than nine (9) weeks of Plaintiff's pay with Defendant." Pl.'s Mem. 3. Plaintiff states that "[h]ad this matter proceeded, Defendant would have argued that since Plaintiff obtained a new and higher paying job approximately nine weeks after her termination, her front and back wage claims would be limited to those nine weeks that she was unemployed." Id. at 6.

Plaintiff does not identify any specific hurdles that she would face in establishing Defendant's liability if the case were to proceed to trial. But counsel investigated the claims and engaged in some discovery, which demonstrates that counsel had an appreciation of the merits and risks of proceeding to trial before negotiating the Settlement Agreement. And Plaintiff "undoubtedly face[s] the uncertainty of defending against dispositive motions to dismiss and for summary adjudication." Deitz v. Budget Renovations & Roofing, Inc., No. 12-0718, 2013 WL 2338496, at *7 (M.D. Pa. May 29, 2013). Therefore, balancing the likelihood of success against the benefit of a certain settlement, a settlement of Plaintiff's FLSA claim is reasonable.

Moreover, the proposed Settlement does not contain a confidentiality clause, which courts have recognized as antagonistic to the FLSA's purposes. See, e.g., Mabry, 2015 WL 5025810, at *2-3; Brumley v. Camin Cargo Control, Inc., No. 08-1798, 2012 WL 1019337, at *6 (D.N.J. Mar. 26, 2012).

However, the release provisions of the Settlement Agreement raise concern. The district court's role in approving the settlement or compromise of FLSA claims by employees rests on the public's unique interest in FLSA rights. Adams, 11 F. Supp. 3d at 476; see also Kraus, 2016 WL 125270, at *6 (explaining the public policy rationale behind judicial approval of proposed FLSA settlement agreements). After all, settlement of disputes between private parties is otherwise generally permitted without court involvement. See Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 881 (1994); Walton v. United Consumers Club, Inc., 786 F.2d 303, 305 (7th Cir. 1986).

As such, when a district court is asked to approve the settlement or compromise of FLSA claims, the court must appreciate the limitations of its role. The judicial scrutiny contemplated by the FLSA is an assessment of the propriety of a plaintiff's decision to release all FLSA-based claim, based on the facts that gave rise to the complaint in that action. By necessity, this release may include parallel claims under

applicable state wage-and-hour statutes, even if the state wage-and-hour cause of action is not otherwise pled in the complaint.[2]

Here, Plaintiff's Complaint alleged that Defendant terminated her employment in retaliation after she complained about wage and overtime FLSA violations that she was experiencing. Yet, the proposed Settlement Agreement asks Plaintiff to waive "<u>any and all</u> Claims" that "concern[] the termination of Plaintiff's employment with Defendant, <u>including, but not limited to</u>, claims arising under the Fair Labor Standards Act and Pennsylvania wage and hour laws." Settlement ¶ 5(a) (emphasis added).

These broad terms, for which the parties seek judicial approval, exceed the legal basis of Plaintiff's Complaint (i.e., wage and hour statutory protection) as well as the factual basis of her Complaint (i.e., alleged retaliation by her employer after she filed complaints with its HR department about wage and overtime pay violations). Legally, the proposed release provisions would preclude Plaintiff from bringing any future claim arising under statutes including "but not limited to" the FLSA and Pennsylvania wage and hour laws. Factually, the

[2] Plaintiff's Complaint alleged only that Defendant violated the FLSA, not Pennsylvania wage-and-hour laws. Compl. ¶¶ 16-20. But there could be no true settlement of a plaintiff's wage-related claim if the waiver was limited to the FLSA cause of action and the same conduct or events could form the basis of a claim pursuant to state law.

proposed release provisions would preclude Plaintiff from bringing "any and all Claims" "concerning the termination of Plaintiff's employment." If the Court blindly approved the waiver of "any and all Claims" "concerning the termination of Plaintiff's employment," the Court risks judicially endorsing a waiver of Plaintiff's other statutorily protected rights that may be implicated by an allegedly unlawful termination. See, e.g., 42 U.S.C. § 1981 (unlawful retaliation under the Civil Rights Act of 1890); 42 U.S.C. § 2000e-3(a) (discriminatory retaliation under Title VII); 42 U.S.C. § 12101 (retaliation under the Americans with Disabilities Act); 43 Pa. Cons. Stat. § 951 (state law cause of action for unlawful retaliation). And such judicial endorsement exceeds the court's judicial approval role under the FLSA.

Moreover, where a defendant has provided consideration for the release of a plaintiff's FLSA claims arising from a particular event, which is the case here, the Court is without knowledge as to the value of those claims. See, e.g., Bettger, 2015 WL 279754, at *8 (explaining that the court had no "information regarding the value of the released claims to the parties, and the parties fail[ed] to provide any explanation for the agreement's far-reaching waivers"). The release of an unknown claim based on a separate statutory cause of action frustrates the fairness of the benefit otherwise provided under

the proposed Settlement Agreement. See id. Therefore, the Court will not, under the auspices of its FLSA settlement approval duty, approve the release provision as drafted in the proposed Settlement Agreement.

3. Attorneys' Fees

The Court next addresses the proposed $3,750.00 in attorneys' fees and costs. Settlement ¶ 4. Under the FLSA, the Court "shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Percentage-of-recovery is the prevailing method used by courts in the Third Circuit to assess attorneys' fees in wage and hour cases. Keller v. TD Bank, N.A., No. 12-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014). The percentage-of-recovery method awards a fixed portion of the settlement fund to counsel. McGee, 2014 WL 2514582, at *4.

Here, the proposed settlement provides for $3,750.00 in attorneys' fees and expenses. Settlement ¶ 4. Subtracting counsel's out-of-pocket expenses of $514.42, Plaintiff's counsel seeks to recover $3,235.58 in attorneys' fees. Pl.'s Mem. 7 (citing Santillo Decl. ¶ 17, ECF No. 16-1). This amount represents approximately 32.4% of the total $10,000 settlement fund.

When evaluating the appropriateness of an attorneys' fee award under the percentage-of-recovery method, the Court must consider the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000). Of course, "[e]ach case is different, and in certain cases, one factor may outweigh the rest." Id.

Here, only one person will benefit from the settlement fund, given that this is a private, not collective, action. Plaintiff, however, has not objected to any portion of the Settlement Agreement, including the fee proposal. Also, Plaintiff's counsel has sufficient experience in this area of law and worked efficiently to settle the case. See Santillo Decl. ¶¶ 3-13. These factors, taken together, weigh in favor of approving the fee request.

The complexity and duration of the litigation is, at most, neutral. Plaintiff has not alleged any complexities unique

to this case,[3] and there were no dispositive motions filed or novel legal issues raised by the parties. As to duration, slightly more than six months elapsed between the date when the case was filed and the date when the parties reached the Settlement Agreement.

As to the amount of time devoted by counsel, Plaintiff's counsel spent approximately 41.6 hours on the case during the case's six month lifespan. Pl.'s Mem. 7 (citing Santillo Decl. ¶ 16). "That number does not seem significant, but that low number represents the parties' ability to quickly reach an agreement." Young v. Tri Cty. Sec. Agency, Inc., No. 13-5971, 2014 WL 1806881, at *10 (E.D. Pa. May 7, 2014). And counsel's effectiveness and efficiency in this regard should certainly be noted.

---

[3] At least one court in the Eastern District of Pennsylvania has stated that "FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts." Brumley, 2012 WL 1019337, at *11. The Brumley court cited to Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 743 (1981), for support. But this is not to say any and all FLSA claims are per se "complex." Rather, the Brumley court's proposition must be taken in context. Brumley involved the analysis of wage-and-hour records for more than 112 plaintiffs. 2012 WL 1019337, at *11. And the Supreme Court explained in Barrentine that "many arbitrators may not be conversant with the public law considerations underlying the FLSA," where the "claims typically involve complex mixed questions of fact and law" that "must be resolved in light of volumes of legislative history[,] . . . legal interpretation and administrative rulings." 450 U.S. at 743. In contrast, a typical, single-plaintiff wage and hour claim may be simple and straightforward where the time period at issue is short and damages can be objectively calculated with reasonable ease.

However, Plaintiff states only that "the parties each served and responded to interrogatories and document requests." Pl.'s Mem. 3. As such, it is unclear whether the nature and quality of the time spent supports the requested fees. Cf. Mabry, 2015 WL 5025810, at *4 (approving 40% for a private settlement where "counsel worked for seventy-five hours on this case and counsel propounded three (3) sets of Interrogatories; two (2) sets of Document Requests; one (1) set of Requests for Admission; and drafted a deficiency letter"); Lyons, 2015 WL 4378514, at *5 (approving attorneys' fees amounting to 44% of the total settlement amount, despite it being "on the higher side," where counsel reviewed approximately 12,000 pages of documents and conducted a deposition); Brumley, 2012 WL 1019337, at *11 (noting that "Plaintiffs' counsel spent over 5,200 hours over the course of the four years" on the case and listing the nature of work conducted, such as investigation and prosecution of the claims, taking and defending depositions, and reviewing and analyzing time and payroll data).

Next, the Court considers the risk of nonpayment. This factor permits the court to consider "award[ing] higher attorneys' fees for riskier litigations." Young, 2014 WL 1806881, at *10. Of course, a favorable outcome at trial is always uncertain. See Sakalas v. Wilkes-Barre Hosp. Co., No. 11-0546, 2014 WL 1871919, at *3 (M.D. Pa. May 8, 2014). But given

the de minimus amount of the recovery and Defendant's status as a publicly funded agency, there is little risk of nonpayment here. See In re Janney Montgomery Scott LLC Fin. Consultant Litig., No. 06-3202, 2009 WL 2137224, at *15 (E.D. Pa. July 16, 2009) ("Courts have found that this factor favors a fee application when defendants are close to insolvency or lack significant unencumbered assets from which a judgment could be obtained."). Moreover, Plaintiff has not identified any additional element of risk, such as Plaintiff's counsel accepting the case on a contingency basis. Cf. Keller, 2014 WL 5591033, at *15 (explaining that "there was a risk of non-payment under the contingency agreement"); Sakalas, 2014 WL 1871919, at *6 (indicating that this factor favored approval where class counsel represented that they undertook the case on a "pure contingency basis").

Finally, the Court considers awards in similar cases. As stated above, fee awards for common fund cases generally range from 20-45% of the fund. Mabry, 2015 WL 5025810, at *4 (collecting cases and the percentages that those courts found to be reasonable). Recognizing that this established spectrum for class and collective actions is not necessarily a suitable gauge in the context of a private FLSA action, the Court nevertheless finds that the requested fee award of $3,235.58--which amounts to 32.4% of the total settlement amount after deducting $541.42

in litigation costs--is fair and reasonable in light of the nature and extent of the work performed. See, e.g., Creed, 2013 WL 5276109, at *6 (determining that "an award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit").

Also, although it is not dispositive, the Court notes that the requested amount is less than the lodestar cross-check amount. Pl.'s Mem. 8; see In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 306-07 (3d Cir. 2005) (describing the lodestar method and nothing that it may be used as a "cross-check" for the percentage-of-recovery method). As such, the Court will approve the requested fee award of $3,235.58. See Settlement ¶ 3.

## IV. CONCLUSION

For these reasons, the Court will grant in part and deny in part Plaintiff's motion for judicial approval of the Settlement Agreement. The Court will not approve the overbroad release provisions, because they are neither fair nor reasonable in light of the FLSA's purpose and the Court's approval role. In all other respects, the Court finds that the proposed Settlement Agreement reflects a fair and reasonable compromise of a bona fide dispute and does not otherwise impermissibly frustrate the implementation of the FLSA in the workplace. Counsel will be

permitted to file an amended settlement agreement for judicial review.

An appropriate order follows.